SEDGWICK LLP
Michael H. Bernstein, *pro hac vice*
Daniel M. Meier
125 Broad Street, 39th Floor
New York, New York 10004-2400
Telephone: (212) 422-0202
Facsimile: (212) 422-0925
Attorneys for Defendants
Hartford Life and Accident
 Insurance Company s/h/a
The Hartford Benefit Management
Services and GDB Claims and
Services Operations

UNITED STATES DISTRICT COURT
DISTRICT COURT OF NEW JERSEY

----------------------------------------------------------x

| | |
|---|---|
| JAMES WRIGHT,<br><br>                              Plaintiff,<br><br>      -against-<br><br>THE HARTFORD BENEFIT MANAGEMENT SERVICES; GDB CLAIMS AND SERVICES OPERATIONS; ABC 1-10 (that being the names of the corporate entities, companies, partnership or individuals intended),<br><br>                              Defendants. | Civil No.: 2:11-cv-00602<br>Hon. Stanley R. Chesler, U.S.D.J.<br>Hon. Michael A. Shipp, U.S.M.J.<br><br><br>**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br>*Motion Date: February 21, 2012* |

----------------------------------------------------------x

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................iii

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS ....................................................................................................2

ARGUMENT..........................................................................................................................2

POINT I

THE COURT MUST REVIEW THIS MATTER PURSUANT TO THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW.....................................................................2

POINT II

THE COURT MUST NOT CONSIDER ANY EVIDENCE OUTSIDE THE ADMINISTRATIVE RECORD ........................................................................................3

POINT III

HARTFORD'S DECISION TO DENY WRIGHT'S CLAIM FOR CONTINUING LTD BENEFITS WAS NOT ARBITRARY AND CAPRICIOUS............................................3

    A.  Wright Received A Full and Fair Review Of His Claim For Continuing LTD Benefits ........................................................................................................3

    B.  Wright's Arguments challenging the Sufficiency of Hartford's Full and Fair Review are Without Merit ........................................................................4

    1.  Hartford Considered the Opinions of Wright's Treating Doctors .......................4

    2.  Hartford Considered the Purported Disabling Side-Effects of Wright's Prescription Medications .........................................................................9

    3.  Wright's Arguments Concerning Hartford's Reliance on the SIU Surveillance Video Are Baseless ........................................................................9

    4.  Wright's Argument that Hartford Acted in an Improper Manner By Relying on the Opinions of Non-Experts are Without Merit. ...........................11

    5.  Hartford was not Required to Conduct a Functional Capacity Evaluation........................12

    C.  The Administrative Record Contains No Evidence Showing that Conflict of Interest Considerations Actually Affected Hartford's Review of Wright's Claim for Continuing LTD Benefits ................................................................13

CONCLUSION ..................................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

Page(s)

## <u>CASES</u>

*Bergquist* v. *Aetna U.S. Healthcare,*
    289 F. Supp. 2d 400 (S.D.N.Y. 2003).............................................................................3

*Black & Decker Disability Plan v. Nord,*
    538 U.S. 822 (2003)..................................................................................................... 5, 6

*Cini v. The Paul Revere Life Ins. Co.,*
    50 F.Supp.2d 419 (E.D.Pa. 1999) .............................................................................. 8, 13

*Das v. UNUM Life Ins. Co. of America,*
    222 Fed.Appx. 126 (3d Cir. 2007)..............................................................................3

*Grimes v. Prudential Financial, Inc.,*
    2010 WL 2667424 (D.N.J. June 29, 2010) ...............................................................13

*Kao v. Aetna Life Ins. Co.,*
    647 F.Supp.2d 397 (D.N.J. 2009) ..............................................................................6

*Metro. Life Ins. Co.* v. *Glenn,*
    554 U.S. 105 (2008).....................................................................................................13

*Michaels v. The Equitable Life Assur. Society of U.S. Employees, Managers, and Agents Long-Term Disability Plan,*
    305 Fed.Appx. 896 (3d Cir. 2009)............................................................................7

*Mitchell v. Eastman Kodak Co.,*
    113 F.3d 433 (3d Cir. 1997) ................................................................................. 3, 12

*Moskalski v. Bayer Corp.,*
    2008 WL 2096892, 10 (W.D.Pa. 2008)................................................................. 8, 13

*Nichols v. Verizon Communications, Inc.,*
    78 Fed.Appx. 209 (3d Cir. 2003)..............................................................................6

*Salute* v. *Aetna Life Ins Co.,*
    No. 04 CV 2035 (TCP)(MLO), 2005 WL 1962254 (E.D.N.Y. Aug. 9, 2005) ....................3

*Sarlo v. Broadspire Services, Inc.,*
    439 F.Supp.2d 345 (D.N.J. 2006)..............................................................................6

*Stephens v. Heckler,*
    766 F.2d 284 (7th Cir. 1985)......................................................................................5

*Stith v. Prudential Ins. Co. of America,*
356 F.Supp.2d 431 (D.N.J. 2005)......................................................................8

*Stratton v. E.I. DuPont De Nemours & Co.,*
363 F.3d 250 (3d Cir. 2004) ............................................................................7

*Williams v. Metropolitan Life Ins. Co,*
2010 WL 936147 (D.N.J. March 12, 2010)................................................ 3, 12

## STATUTES

Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA")......................1

ERISA §502(a)(3) ....................................................................................................................1

## RULES

Local Rule 56.1 (a) ............................................................................................................ 1, 2

Rule 56, Fed. R. Civ. P., ....................................................................................................1

## PRELIMINARY STATEMENT

Defendant Hartford Life & Accident Insurance Company ("Hartford") respectfully submits this reply memorandum of law in further support of its motion pursuant to Rule 56, FED. R. CIV. P., for an order granting summary judgment dismissing plaintiff James Wright's ("Wright") complaint[1], in which he seeks an award of long-term disability ("LTD") benefits under the Group Long Term Disability Plan for the employees of JPMorgan Chase Bank, an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA").

As a preliminary matter, Wright did not submit a Counter-Statement to Hartford's Rule 56.1 Statement of Material Facts and thus, pursuant to Rule 56.1 (a) of the Local Civil and Criminal Rules of the United States District Court for the District of New Jersey ("L.R."), all of the material facts set forth in Hartford's Rule 56.1 Statement of Material Facts are deemed admitted.

Wright's opposition attempts to highlight purported deficiencies in Hartford's claim review process in an effort to show that it did not provide a full and fair review of his claim. Each of his attempts, however, is unavailing because Wright fails to cite any factual support for his arguments and/or because his arguments are contradicted by binding legal precedent on point. Significantly, Wright's opposition fails to reference to any medical evidence in the administrative record demonstrating how his purported functional limitations prevented or interfered with his ability to perform the essential duties of his own or any occupation.

---

[1] Wright appears to have abandoned several of the causes of action included in his complaint, including his state law claims against Hartford for breach of contract and breach of fiduciary, as well as his claims under ERISA §502(a)(3). Wright's opposition neither references nor requests any relief from the Court regarding these counts. Accordingly, Hartford respectfully refers the Court to Points III and IV of its Memorandum of Law in Support of its Motion for Summary Judgment dated November 28, 2011 ("Defendant's MOL") for a detailed discussion of why the Court should grant Hartford summary judgment dismissing Wright's state law counts as well as his count based on ERISA §502(a)(3), and the arguments presented there are incorporated by reference herein.

For these reasons and as more fully discussed below, as well as for all of the reasons discussed in Hartford's initial motion papers (Doc. No. 29), it is respectfully requested that the court grant summary judgment dismissing Wright's complaint in its entirety.

## STATEMENT OF FACTS

Wright's Opposition to Hartford's Motion for Summary Judgment ("Plaintiff's Opp.") does not include a chronological statement of facts, nor did he submit a Counter-Statement to Hartford's Rule 56.1 Statement of Material Facts ("Rule 56.1 Statement") and thus, pursuant to the Local Civil and Criminal Rules of the United States District Court for the District of New Jersey ("L.R."), each statement in the Rule 56.1 Statement is deemed admitted. *See* L.R. 56.1(a). Although the facts are undisputed, Wright's opposition either mischaracterizes or incompletely cites to the record facts in order to support his untenable arguments. Hartford respectfully refers the Court to its Rule 56.1 Statement, as well as the "Statement of Facts" section of its Memorandum of Law in Support of its Motion for Summary Judgment ("Defendant's MOL", pp. 3-18), for a complete and accurate recitation of the facts in this matter, and each and every undisputed fact is incorporated herein by reference. Any further discussion of the facts herein will be limited to responding to points raised in Wright's opposition.

## ARGUMENT

### POINT I
### THE COURT MUST REVIEW THIS MATTER PURSUANT TO THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW

There is no dispute that the Court must review this matter pursuant to the arbitrary and capricious standard of review. (Plaintiff's Opp. pp. 1-2). Hartford respectfully refers this Court to Point I and II of Defendant's MOL and Point I and III (A) of Hartford's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment dated January 27, 2012 ("Hartford's Opp."

at pp. 3, 4-6), for a full discussion of the law applicable to this standard of review and an explanation of why Hartford's determination was not arbitrary and capricious. For the sake of brevity, Hartford incorporates those arguments by reference herein. (*See* Hartford's MOL pp. 18-25).

## POINT II
## THE COURT MUST NOT CONSIDER ANY
## EVIDENCE OUTSIDE THE ADMINISTRATIVE RECORD

Wright references the Affidavit of his treating physician Dr. David Garrison dated August 26, 2011, which was first submitted to Hartford during litigation and thus, is inadmissible extra-record evidence. Hartford respectfully refers the Court to Point I of Defendant's Memorandum of Law in Support of its Motion to Strike ("Hartford's MOS") and Point I of Hartford's Reply Memorandum of Law in Further Support of its Motion to Strike ("Hartford's Reply"), for a detailed discussion of the law and facts in support of its argument that Dr. Garrison's Affidavit is an extra-record submission that cannot be considered by the Court in connection with the parties' respective dispositive motions, and those arguments are incorporated herein by reference. *See Das v. UNUM Life Ins. Co. of America,* 222 Fed.Appx. 126, 133 (3d Cir. 2007); *see also Salute* v. *Aetna Life Ins Co.*, No. 04 CV 2035 (TCP)(MLO), 2005 WL 1962254, *6 (E.D.N.Y. Aug. 9, 2005); *Bergquist* v. *Aetna U.S. Healthcare,* 289 F. Supp. 2d 400, 411 (S.D.N.Y. 2003).

## POINT III
## HARTFORD'S DECISION TO DENY WRIGHT'S CLAIM
## FOR CONTINUING LTD BENEFITS WAS NOT
## ARBITRARY AND CAPRICIOUS

### A.    Wright Received A Full and Fair Review Of His Claim For Continuing LTD Benefits

It was Wright's burden to demonstrate that he was disabled as that term is defined in the Plan. *See Williams v. Metropolitan Life Ins. Co*, 2010 WL 936147, *7 (D.N.J. March 12, 2010); *see also Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 439 (3d Cir. 1997). To meet his burden, the Plan requires that Wright provide proof that he met the Plan's definition of disability – that is, that he was

incapable of performing the essential duties of his own occupation. (20-21).[2] Wright failed to meet that burden because he did not submit proof demonstrating that he was unable to perform the duties of his own or "Any Occupation" beyond August 4, 2009.[3] (166-172, 147-153). The Court's attention is respectfully referred to Point II (A) of Hartford's MOL (at pp. 20-25) and Point III(A) of Hartford's Opp. (at pp. 4-6) for a detailed discussion of Hartford's full and fair review of Wright's continuing claim for LTD benefits, which clearly demonstrates that Wright's submissions failed to meet his burden and thus, Hartford's decision to deny Wright's claim for continuing LTD benefits is supported by substantial evidence in the administrative record, and those arguments are incorporated herein by reference.

**B.**     **Wright's Arguments challenging the Sufficiency of Hartford's Full and Fair Review are Without Merit**

    **1.**     **Hartford Considered the Opinions of Wright's Treating Doctors**

Wright argues that Hartford acted in an arbitrary and capricious manner by relying on the independent medical record peer review report of Dr. Eric Kerstman, who is board certified in Physical and Rehabilitation Medicine, which, he claims, ignored the opinions of his treating doctors indicating that Wright was incapable of gainful employment. (Plaintiff's Opp. pp. 3-7). This is demonstrably inaccurate as Dr. Kerstman's report indicates that while he discussed Wright's functional capacity with his treating doctors, his medical opinion was based on all of Wright's medical records, including those from his treating doctors, all of which were part of the

---

[2] All references to numbers "00001" through "000039" are to the Bates Stamped pages annexed as Exhibit "A" of the Declaration of Juan M. Mendez dated November 1, 2011 (the "Mendez Dec."). All references to numbers "000040" to "000993" are to the Bates Stamped pages annexed as Exhibit "B" to the Mendez Dec. All references to numbers "000994" to "001112" are to the Bates Stamped pages annexed as Exhibit "C" to the Mendez Dec. All references to the "Complaint" are to the Complaint filed February 2, 2011 and annexed as Exhibit "E" to the Declaration of Daniel M. Meier dated November 28, 2011.

[3] While Wright's claim was considered by Hartford under the Plan's "Your Occupation" disability definition, the Plan's disability definition was set to change to the "Any Occupation" definition on August 22, 2009. (20, 21). Accordingly, Hartford conducted its review based on both disability definitions under the Plan. (105).

administrative record, and none of which supported Wright's doctors' conclusory opinions. (221-224).

Wright does not argue that Hartford ignored the medical records of his treating doctors in rendering its adverse benefit determination. Rather, he advances the untenable argument that Dr. Kerstman should have solely relied on Wright's treating doctors' unsupported medical opinions, which were made only after Hartford had denied his claim for continuing LTD benefits. (Plaintiff's Opp. pp. 3-7).[4] Specifically, Wright references the opinions of his treating chiropractor, Dr. Thomas P. Jeffers,[5] and internist, Dr. David M. Garrison,[6] who separately told Dr. Kerstman in February 2010 that Wright was not capable of working in any capacity. (Plaintiff's Opp. pp. 3-5). However, these opinions are completely unsupported by any clinical evaluations or objective medical testing in either of their records and are therefore, unreliable. (257-260, 263-276, 261-262). Perhaps in recognition of this circumstance, Wright avoids any discussion of his medical records from these treating doctors because the administrative record is devoid of any proof correlating Wright's subjective complaints of pain with a functional inability to perform his own occupation or "any occupation." It is well-settled that a claims administrator may consider a lack of objective evidence

---

[4] The only explanation for Wright's treating doctor's unsupported conclusory opinions is that they did not act as an objective clinicians in this case. Rather, it appears that they assumed the role of patient advocates by providing opinions that were not present in their treatment records. The U.S. Supreme Court has recognized that a treating physician may feel sympathy for his patient and thus favor a finding of disability. *See Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 832-833 (2003); *see also Stephens v. Heckler,* 766 F.2d 284, 289 (7th Cir. 1985) ("The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.").

[5] Wright does not point to any records from Dr. Jeffers to support his conclusory opinions. Indeed, Dr. Jeffers admitted to Dr. Kerstman that he provided his opinion without even reviewing the surveillance footage. (222).

[6] Wright, again, fails to reconcile Dr. Garrison's conclusory opinion regarding his purported inability to work with his May 21, 2009 letter to Hartford, in which he refused to provide an opinion concerning Wright's functional capacity because he stated that he was unqualified to do so. (392). Hartford respectfully refers to Pont III(C) of Hartford's Opp. for a detailed discussion of the law and facts in support of Hartford's argument that it considered the conclusory opinions of Dr. Garrison. (Hartford's Opp. pp. 8-11).

substantiating subjective complaints when evaluating a claim for ERISA benefits. *See Sarlo v. Broadspire Services, Inc.*, 439 F.Supp.2d 345, 362 (D.N.J. 2006); *see also Kao v. Aetna Life Ins. Co.*, 647 F.Supp.2d 397, 413 (D.N.J. 2009). Indeed, "[b]ecause a reasonable person could find such objective evidence helpful in establishing a standard measurement of the extent or severity of [a claimant's] symptoms and disability ..., requiring such evidence [is] not arbitrary and capricious." *Sarlo,* 439 F.Supp.2d at 362 citing *Nichols v. Verizon Communications, Inc.,* 78 Fed.Appx. 209, 212 (3d Cir. 2003); *see also Kao*, *supra.* Wright does not suggest that Hartford failed to review any relevant clinical testing showing that he was functionally unable to perform the duties of his own or "any occupation." Indeed, the only objective test results in the administrative record, that have any bearing on Wright's functional restrictions/limitations and were submitted in support of his claim, is a December 2008 EMG report of his upper and lower extremities that documented completely normal results, with no signs of cervical radiculopathy and thus, did not support Wright's claimed functional impairment. (732).

Notably, Wright does not challenge the sufficiency of Dr. Kerstman's opinions concerning his functional abilities, nor does he suggest that Hartford acted in arbitrary and capricious manner by relying on these well supported opinions. Rather, Wright argues that Hartford should have blindly relied on the unsupported opinions of his treating doctors solely because they are his treating doctors. (Plaintiff's Opp. pp. 3-6). This argument has been explicitly rejected by the U.S. Supreme Court and the Third Circuit.  As the U.S. Supreme Court has explained, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *See Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 832-833 (2003); *Michaels v. The Equitable Life Assur. Society of U.S.*

*Employees, Managers, and Agents Long-Term Disability Plan*, 305 Fed.Appx. 896, 906, 2009 WL 19344, * 9 (3d Cir. 2009); *Stratton v. E.I. DuPont De Nemours & Co.,* 363 F.3d 250, 258 (3d Cir. 2004).

Wright's argument that Dr. Kerstman ignored the opinions of his treating physiatrist, Dr. Robert H. Vrablik, is similarly belied by the administrative record. (Plaintiff's Opp. pp. 6-7; *see also* 222). During his conversation with Dr. Kerstman, Dr. Vrablik indicated that based on his clinical evaluation,[7] Wright was functionally limited to lifting a maximum of 10 to 15 pounds based on his cervical spine condition, and that he would require frequent breaks in work and changes in position every hour due to chronic pain. (222). In his report, Dr. Kerstman concluded that based on all of Wright's medical records, the surveillance footage and the opinion of his treating physicians, Wright was limited to lifting a maximum of 10 pounds, sitting for a maximum of 2 hours at a time with the ability to change positions frequently for comfort, 8 hours total sitting per day, standing for a maximum of 1 hour at a time, 2 hours total standing per day, and walking for a maximum of 1/2 hour at a time, 1 hour total walking per day. (223). Wright's argument that Dr. Kerstman ignored Dr. Vrablik's opinion is baseless considering that the functional restrictions/limitations Dr. Vrablik outlined are essentially the same as those Dr. Kerstman concluded were applicable.[8]

---

[7] Dr. Vrablik is the only one of Wright's treating doctors who provided an assessment of his functional limitations/restrictions. (222). Until Hartford's initial adverse benefit determination, the administrative record reflects that all of Wright's treating doctors consistently deferred their opinions regarding Wright's functional restrictions/limitations to Dr. Vrablik or, simply refused to provide their opinions. (109-110, 180, 221, 321, 387, 392).

[8] Wright also references an office visit note from Dr. Vrablik dated September 14, 2009, which occurred prior to his conversation with Dr. Kerstman during which he identified Wright's specific restrictions/limitations. In this note Dr. Vrablik stated that he did not see how Wright could work a functional 8 hour work day with his current pain levels. (259-260). Wright fails to mention that this opinion was provided after Wright informed Dr. Vrablik that his claim for continuing LTD benefits had been denied. (260). Despite Dr. Vrablik's apparent sympathy for Wright's financial situation, which should not have been a consideration in issuing an objective medical opinion, Dr. Vrablik admitted that Wright's pain levels were based solely on his subjective complaints and did not reference any proof correlating Wright's subjective complaints of pain with a functional inability to perform his own occupation or "any occupation."(260).

Wright argument relies almost exclusively on *Stith v. Prudential Ins. Co. of America*, 356 F.Supp.2d 431, 440 (D.N.J. 2005), for the proposition that it is arbitrary and capricious for a claim administrator to rely solely on the opinion of a peer review doctor, while discounting the opinions of the plaintiff's treating physicians. (Plaintiff's Opp. pp. 2-3, 9-10). In *Stith,* the peer review doctor completely rejected the plaintiff's complaints of pain as subjective and thus, found them not disabling. The Court found the claim administrator's reliance on this opinion, which completely ignored the opinions of the plaintiff's treating physicians, to be arbitrary and capricious. Wright's reliance on *Stith* is misplaced. As referenced in Point III(A)(B)(C) of Hartford's Opp. and Point III(B)(1), *supra*, Hartford clearly credited Wright's subjective complaints of pain as well as the opinions of his treating doctors. Indeed, Dr. Kerstman acknowledged that Wright's pain complaints require certain physical restrictions and limitations. (223). However, based on all of the medical records in the administrative record, Hartford determined that Wright did not submit proof correlating his subjective complaints of pain with a functional inability to perform his own occupation or "any occupation."

Wright also argues, without any legal support, that Hartford acted in an arbitrary and capricious manner by relying on the opinions of Dr. Kerstman because he did not examine Wright. (Plaintiff's Opp. p. 6). Wright's baseless argument ignores the fact that there is no requirement imposed by the Plan or the law compelling an ERISA claim administrator to conduct an IME prior to assessing a claim for benefits. *See Moskalski v. Bayer Corp.*, 2008 WL 2096892, 10 (W.D.Pa. 2008); *see also Cini v. The Paul Revere Life Ins. Co.*, 50 F.Supp.2d 419 (E.D.Pa. 1999). Accordingly, it was well within Hartford's discretion to determine that no IME was required.

Therefore, Hartford was acting within its discretion when it relied on the opinion of Dr. Kerstman, who reviewed Wright's records, spoke with his treating doctors and opined that he had the functional ability to perform sedentary physical demand level work.

### 2. Hartford Considered the Purported Disabling Side-Effects of Wright's Prescription Medications

Wright argues that Hartford did not consider the purported disabling side-effects of his prescription medications. (Plaintiff's Opp. pp. 7-10). For the sake of brevity, Hartford refers the Court to Point II (B) of Hartford's Opp. for a discussion of the law and facts on this point, which demonstrate that while Hartford considered Wright's claim that he was disabled by the side-effects of his medication, the administrative record is devoid of any evidence showing that his functional capacity was detrimentally affected by these side-effects in the manner he claims. (Hartford's Opp. pp. 6-8).

### 3. Wright's Arguments Concerning Hartford's Reliance on the SIU Surveillance Video Are Baseless

Wright argues that Hartford mischaracterized the surveillance video footage by describing the physical activity depicted as "strenuous physical work." (Plaintiff's Opp. p. 11). This is nothing more than a pointless game of semantics that only serves to highlight the vacuity of Wright's arguments. Certainly, the Court can view the surveillance video and arrive at its own conclusions, but it is no exaggeration to state that it depicts Wright performing yard work well beyond his purported functional capacity for an extended period of time. (1111, 1106; Exhibit "D"). Specifically, the surveillance video shows Wright performing several physically demanding activities, including digging with a shovel, carrying heavy containers of dirt, bending at the waist, raking, sweeping, using a garden hose, and driving. (1111, 1106; Exhibit "D"). Wright also argues that Hartford improperly relied on the surveillance footage because it was not a true account of his functional abilities. (Plaintiff's Opp. p. 12). This argument is inconsistent with the facts and it is disingenuous for Wright to be caught on film demonstrating his ability to perform various physical activities he claimed to be unable to do and yet continue to insist that he does not have the ability to perform the activities he is actually seen doing on film. Wright does not (and cannot) reasonably

9

argue that he is not the subject of the video or that the video depicts something other than what actually occurred.

More importantly, Wright's argument is based on a misconception concerning the weight Hartford gave to the surveillance footage during its review of his claim.  In fact, Hartford's use of the video was limited to its conclusion that Wright was not a credible source for information about his subjective complaints or functional abilities.  But that conclusion merely lead to Hartford's further review of Wright's medical treatment records – not a denial of his claim based solely on the surveillance video. Hartford refers the Court to Point III(D) of Hartford's Opp. for an in depth discussion of the law and facts regarding Hartford's reliance on the SIU surveillance footage. (Hartford's Opp. pp. 12-14).

Wright also argues, without any legal or factual support, that Hartford acted in an arbitrary and capricious manner in failing to provide, what he assumes to be, the "entire" surveillance video, to his treating doctors, including video depicting the time that Wright was not observed by the investigators. (Plaintiff's Opp. p. 13). This argument fails to consider that surveillance footage was only obtained when the subject (i.e. Wright) was observed by the investigators. (1106-1107). The investigators' report clearly reflects that the footage submitted includes all of the subject's observed activity and thus, no other footage exists. (*Id.*). Notably, Wright has not set forth any basis or rationale to support his argument that additional video footage exists.

Wright also argues that the SIU surveillance video was outdated by the time of Hartford's review of his administrative appeal and that Hartford failed to consider that he underwent two hernia revision surgeries after the surveillance video was taken on July 8, 2008. (Plaintiff's Opp. p. 13). This argument is disingenuous considering that on the day before the surveillance was taken (i.e. July 7, 2008), Wright visited his treating surgeon, Dr. James O'Brien's office, complaining of an abdominal bulge, which Dr. O'Brien diagnosed as a recurrent hernia and indicated that surgery to

10

repair the hernia was necessary. (552). The surveillance video at issue was taken the very next day and showed Wright performing strenuous physical activity, notwithstanding the existence of this diagnosed hernia. (Exhibit "D"). Subsequently, Wright underwent the two revision surgeries referenced in his brief, which were deemed successful after the results of an August 3, 2009 CT Scan of Wright's abdomen was found to be unremarkable. (264-265). Therefore, Wright's argument that his functional capacity was greater when he actually had a hernia that required surgical intervention than after it was repaired is absurd and must be rejected by this Court.

### 4.     Wright's Argument that Hartford Acted in an Improper Manner By Relying on the Opinions of Non-Experts are Without Merit.

Wright argues that Hartford acted in an arbitrary and capricious manner by relying on the non-expert opinions of Hartford Claim Examiner Christie Mendez and Hartford Investigator Gerard Tobin. (Plaintiff's Opp. pp. 13-18). This argument makes no sense since neither of these individuals rendered any opinions upon which Hartford relied.  Certainly, Wright has not identified any medical opinion or other purportedly improper opinion of Ms. Mendez that Hartford relied on in issuing its final adverse benefit determination. In fact, Wright merely references a milestone call with Ms. Mendez on May 22, 2008, during which he suspiciously answered his home telephone in a businesslike manner, saying "Jim Wright, How can I help you?" (132-133). Due to this greeting, the fact that Wright's mailing address also listed a P.O. Box registered to a private company, and several discrepancies in his medical records, Ms. Mendez referred Wright's file to the Hartford SIU to conduct surveillance.(130, 409, 1036). Wright argues that Ms. Mendez based her "decision" to forward the file to SIU based on this evidence as being an improper "opinion," but that is not an accurate description of what transpired. All Ms. Mendez did in response to her reasonable suspicions about Wright's behavior was to refer Wright's file to the Hartford SIU.  Manifestly, this is not an "opinion" nor is it something on which Hartford relied in reaching its adverse benefit determination.

Wright also argues that Hartford acted in an arbitrary and capricious manner by relying on the "opinions" that Hartford SIU Investigator Mr. Tobin expressed in his investigative report. (Plaintiff's Brief pp. 15-18). Once again, Wright does not identify any medical or other opinion by Mr. Tobin.  Rather, Mr. Tobin's investigative report simply documents his observations, and Wright's responses to questions given during his interview. (409-412). Moreover, Wright does not point to any evidence in the administrative record showing that Hartford relied on Mr. Tobin's purported "opinion" as a basis for its adverse benefit determination.[9]

### 5.    Hartford was not Required to Conduct a Functional Capacity Evaluation

Wright argues that Hartford should have obtained a Functional Capacity Evaluation ("FCE") because his treating physicians indicated that such an examination might be instructive in determining his functional capacity.[10] (Plaintiff's Opp. pp. 18-20). However, Wright bears the burden to submit proof in support of his claim that will be satisfactory to Hartford (17) and to demonstrate that his claimed disability prevented him from working. *See Williams*, 2010 WL 936147 at *7; *see also Mitchell*, 113 F.3d at 439.

---

[9] Wright also argues that Mr. Tobin's observations should be discounted because they are not "objective evidence to substantiate Hartford's claim that [   ] Wright was able to work 8 hours a day 5 days a week." (Plaintiff's Opp. p. 16). Wright's acknowledgement that Hartford must rely on objective medical evidence is telling since he does not point to any objective evidence in the administrative record demonstrating that he was rendered physically unable to perform the essential duties of his own or any occupation.

[10] This argument is disingenuous in light of the results of the FCE that Wright improperly submitted in support of his motion for summary judgment. *See* Exhibit "AI" to the Affidavit of Kevin T. Kutyla in support or Brief in Support of his Motion for Summary Judgment ("Plaintiff's Motion"). (Docket No.: 39-2). Although Hartford did not rely on this FCE because it was conducted long after Hartford's final adverse benefit determination was issued, Wright inexplicably argued that Hartford had relied on it, and in doing so, acted in an arbitrary and capricious manner.  Wright's attempts to distance himself from the FCE report are understandable in light of the fact that it includes the examiner's opinion that Wright could perform work at the light physical demand level. (Plaintiff's MOL p. 6). Wright's inconsistent positions concerning the FCE discredit his arguments about Hartford's review process and therefore the Court should disregard them. Hartford refers the Court to Point III(E) of Defendant's Opp., for a detailed discussion of the law and facts in support of Hartford's arguments regarding the FCE improperly submitted by Wright, and the arguments presented there are incorporated by reference herein.

Hartford is not required to create evidence to support Wright's claim for continuing LTD benefits, nor is it required to generate evidence to disprove Wright's claim for continuing LTD benefits. *See Id.* Moreover, Wright was certainly aware that his treating physicians (other than Dr. Vrablik) had refused to identify any restrictions/limitations to support his claimed disability, and that they thought an FCE might be helpful. Indeed, Wright acknowledged his awareness of the fact that his treating physicians recommended an FCE in his August 18, 2009 appeal letter. (300). Yet, Wright contacted Hartford on December 29, 2009 and indicated that his appeal was complete and that he would not be submitting any further information, including an FCE report. (94). Wright had approximately four months after acknowledging his treating physician's FCE recommendation to undergo and submit a completed FCE report in support of his claim on appeal. He did not do so. Now Wright argues, without any support in fact or law, that it was Hartford's burden to obtain such proof. Wright's baseless argument is utterly without merit and ignores the fact that there is no requirement imposed by the Plan or the law requiring an ERISA claim administrator to conduct an IME or FCE prior to assessing a claim for benefits. *See Moskalski*, 2008 WL 2096892 at 10; *see also Cini.*

### C.     The Administrative Record Contains No Evidence Showing that Conflict of Interest Considerations Actually Affected Hartford's Review of Wright's Claim for Continuing LTD Benefits

In *Metro. Life Ins. Co.* v. *Glenn*, 554 U.S. 105 (2008), the U.S. Supreme Court addressed the issue of whether a structural "conflict of interest" must be considered by a reviewing court when a plan fiduciary both insures and is granted discretion to make benefit claims decisions under the plan. The Court held that the "conflict of interest" is one of "several different considerations" a court must weigh when reviewing an adverse benefit decision. *Id.* at 2351. Importantly, the conflict of interest factor will not be weighed in Wright's favor in the absence of any evidence showing that a link exists between the conflict of interest and Hartford's adverse benefit determination. *See Grimes v. Prudential Financial, Inc.*, 2010 WL 2667424, *15 (D.N.J. June 29, 2010). Wright references a variety of

purported procedural violations committed by Hartford in the review of his claim, but as discussed above and in Point III(A)(F) of Defendants' Opp., none of these criticisms actually describe any procedural violations, and in every instance cited by Wright, Hartford's conduct was reasonable and appropriate. *See* Point III(B)(1)(2)(3)(4)(5), *supra*. Therefore, the Court should not give the "conflict of interest" factor any weight.[11]

## CONCLUSION

For the foregoing reasons, this Court should grant the Defendants' motion for summary judgment dismissing Wright's Complaint because Hartford's decision terminating his claim for LTD benefits was based on substantial evidence in the administrative record and not arbitrary and capricious.

Dated: New York, New York
February 21, 2012

Respectfully submitted,

  s/ Daniel M. Meier
MICHAEL H. BERNSTEIN *pro hac vice*
DANIEL M. MEIER (DM- 041942006)
SEDGWICK LLP
125 Broad Street, 39th Floor
New York, NY 10004
Tel. (212) 422-0202
Fax (212) 422-0925
Attorneys for Defendant

---

[11] Since Wright does not assert any new conflict arguments in his opposition concerning conflict of interest, the Court's attention is respectfully referred to Point II(B) of Hartford's MOL for a detailed discussion of the facts and law relative to conflict of interest. The Court's attention is also directed to the Declaration of Bruce Luddy dated November 14, 2011 and the Declaration of Juan Mendez dated November 1, 2011 submitted in support of the Hartford's Motion for Summary Judgment.

SEDGWICK LLP
125 Broad Street, 39th Floor
New York, New York 10004-2400
Telephone: (212) 422-0202
Facsimile: (212) 422-0925
Attorneys for Defendants
Hartford Life and Accident Insurance Company s/h/a
The Hartford Benefit Management Services
 and GDB Claims and Services Operations


UNITED STATES DISTRICT COURT
DISTRICT COURT OF NEW JERSEY

-----------------------------------------------------------------x

JAMES WRIGHT,

                               Plaintiff,

    -against-


 THE HARTFORD BENEFIT
MANAGEMENT SERVICES; GDB CLAIMS
AND SERVICES OPERATIONS; ABC 1-10
(that being the names of the corporate entities,
companies, partnership or individuals intended),

                           Defendants.

Civil No.: 2:11-cv-00602
Hon. Stanley R. Chesler, U.S.D.J.
Hon. Michael A. Shipp, U.S.M.J.

**PROOF OF MAILING**

-----------------------------------------------------------------x

    1.      I, Daniel M. Meier, am an associate with the law firm of Sedgwick LLP, attorneys for

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY i/s/h/a THE HARTFORD

BENEFIT MANAGEMENT SERVICES and GDB CLAIMS AND SERVICES OPERATIONS.

    2.      I hereby certify that I mailed a sealed package with postage pre-paid, via  regular mail

addressed to:

                    Kevin T. Kutyla, Esq.
                    83 Spring Street
                    Newton, NJ 07860
                    (973) 940-8970
                    Attorney for Plaintiff

3.     This package contains a copy of defendant's Reply Memorandum of Law in Further Support of its Motion for Summary Judgment, which was filed with the court via ECF.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  February 21, 2012

s/ Daniel M. Meier
Daniel M. Meier, Esq. (DM- 041942006)