**NOT FOR PUBLICATION**                                             **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|                                              |   |                                          |
|----------------------------------------------|---|------------------------------------------|
|                                              | : |                                          |
| JAMES WRIGHT,                                | : | Hon. Faith S. Hochberg, U.S.D.J.         |
|                                              | : |                                          |
|                       Plaintiff,             | : | Civil Case No. 11-602 (FSH) (MAH)        |
|                                              | : |                                          |
|            v.                                | : | **OPINION**                              |
|                                              | : |                                          |
| THE HARTFORD BENEFIT MANAGEMENT              | : | Date: May 11, 2012                       |
| SERVICES, *et al*.,                          | : |                                          |
|                                              | : |                                          |
|                       Defendants.            | : |                                          |
|                                              | : |                                          |

**HOCHBERG, District Judge;**

This matter comes before the Court on the parties' Cross-Motions for Summary

Judgment pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56.1 and Defendants' motion to

strike portions of the affidavit filed by Plaintiff's counsel in support of Plaintiff's motion for

summary judgment.  The Court has reviewed the parties' submissions pursuant to Fed. R. Civ. P.

78.

## I.      BACKGROUND

This case arises from Defendant The Hartford Benefit Management Services'

("Hartford") decision to terminate Plaintiff James Wright's ("Wright") long-term disability

("LTD") benefits under the Group Long Term Disability Plan for the employees of JPMorgan

Chase Bank ("the Plan"), an employee welfare benefit plan governed by the Employee Retiree

Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA").  Wright alleges that

Hartford's decision to terminate his LTD benefits was arbitrary and capricious and in violation of

ERISA.  Wright also brings claims for breach of fiduciary duty and breach of contract.

The Plan defines "Disability or Disabled" as follows:

1. during the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation;
2. for the 24 months following the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are less than 80% of your Indexed Pre-disability Earnings;
3. after that, you are prevented from performing one or more the Essential Duties of Any Occupation.

Declaration of Juan M. Mendez ("Mendez Decl."), Exhibit A at 21.[1]  The Plan defines "Elimination Period" as "the first 182 consecutive day(s) of any one period of Disability."  *Id.* at 6.  The Plan provides that "[y]our Disability must be the result of: 1. accidental bodily injury; 2. sickness; 3. Mental Illness; 4. Substance Abuse; or 5. pregnancy."  *Id.* at 21.  "Essential Duty" is defined as "a duty that: 1. is substantial, not incidental; 2. is fundamental or inherent to the occupation; and 3. can not [sic] be reasonably omitted or changed."  *Id.*  "Your Occupation," which is used to determine disability during the Elimination Period and the twenty-four months following, is defined as follows: "as it is recognized in the general workplace.  Your occupation does not mean the specific job you are performing for a specific employer at a specific location."  *Id*. at 24.  "Any Occupation," which is used to determine disability following the twenty-four months after the Elimination Period, is defined as "an occupation for which you are qualified by education, training or experiencing, and that has an earnings potential greater than an amount equal to the lesser of the product of your Indexed Pre-disability Earnings and the Benefit Percentage and the Maximum Monthly Benefit shown in the Schedule of Insurance."  *Id.* at 20.

Wright was an employee of JPMorgan Chase ("Chase") and a participant in the Plan.  Hartford both funded the Plan and administered claims for benefits under a full grant of discretionary authority.  Wright was employed as an ISG Project Manager, a position which

---

[1] Unless otherwise indicated, all references to page numbers are to the Bates numbered pages contained in the record as attached in Exhibits A through D to the Mendez Decl.

allowed him to telecommute from home and which required him to communicate with co-workers electronically and by telephone and to travel occasionally.  Wright ceased working at Chase in February 2007 and applied for short-term disability ("STD") benefits in March 2007, due to pain and other symptoms associated with a herniated disc at C6-C7, including numbness in his right arm and the inability to more his right arm above his waist.  Hartford approved Wright's claim for STD benefits on March 8, 2007 and Wright received STD benefits through exhaustion of those benefits on August 21, 2007, during which time he had spine surgery (anterior cervical discectomy with fusion) and abdominal hernia repair surgery.

On December 3, 2007, Hartford approved Wright's claim for LTD benefits effective August 22, 2007 in the amount of $6,145 per month.  On February 28, 2008, as part of its review of Wright's claim for continuing LTD benefits, Hartford received an Attending Physician Statement ("APS") from Wright's treating internist Dr. David A. Garrison, which stated that Wright had been diagnosed with cervical spondylosis with myelopathy, secondary to depression. On March 5, 2008, a Hartford Claims Examiner approved Wright's claim for continuing LTD benefits, noting that Hartford should follow up on the results of diagnostic testing that Wright's neurologist recommended, including electromyography ("EMG") and a nerve conduction study ("NCS").

On May 22, 2008, during a milestone call between Wright and a Hartford Claims Examiner, Wright "answered the phone in a business manner 'Jim Wright, How can I help you?'" after which "his speech became less clear" once he realized it was Hartford calling. Mendez Decl., Ex. B at 131.  After this call, Hartford extended Wright's LTD benefits, but on June 24, 2008, referred Wright's file to Hartford's Special Investigation Unit ("SIU") for review

3

based on the call, the fact that Wright had been discharged from physical therapy due excellent range of motion and strength, and the fact that his P.O. box was associated with a business.

On July 7 and 8, 2008, a third party, ICS Merrill, retained by Hartford's SIU conducted two days of surveillance of Wright.  During this surveillance, the contractor filmed Wright shoveling and sifting dirt and spraying a hose in his yard for approximately one hour as well as driving to a local store.  *See id.*, Ex. D.  Following a hernia repair operation, Hartford SIU conducted an in person interview with Wright on December 18, 2008 at his attorney's office. After the interview, during which Hartford's SIU Investigator noted that Wright "appeared to walk at a normal and with a smooth gait," Wright signed a statement documenting the interview. *Id.*, Ex. B. at 410.  In the signed statement, Wright stated that he had muscle spasms from his toes to his fingers, pain throughout his body at all times, and was "limited to about 30 minutes per activity per day," including "sitting, standing, walking, driving, and other basis activities." *Id.* at 416-17.

Following the in-person interview and a review of Wright's updated medical records, on February 23, 2009, Hartford's SIU referred Wright's file to a Hartford Medical Case Manager ("MCM") for review.  Wright's claim for continuing LTD benefits was approved during the MCM review.  Hartford's MCM reviewed Wright's medical records, including a February 18, 2009 office visit note from physiatrist Dr. Robert H. Vrablik, which, while noting Wright's complaints of pain, stated that Wright's EMG was negative for cervical radiculopathy and that Wright "was able to ambulate into the office today generally normal, reciprocal gait."  *Id.* at 281. After her review of these records and the surveillance video, the MCM requested updated opinions from Wright's treating physicians regarding his functional capacity.  Dr. Garrison responded that Wright needed to be evaluated by someone with a higher level of expertise such

as a physiatrist; Dr. Dwyer responded that since his specialty is spinal surgery and not rehabilitation and disability evaluations, he recommended that Wright undergo a functional capacity evaluation ("FCE") in order to determine his level of disability; and Dr. O'Brien responded that he would not provide restrictions from a general surgery perspective.  *Id.* at 109-110, 287, 392.

In response to a separate request from the MCM, Dr. Vrablik indicated on June 9, 2009 that he did not believe Wright could perform his job functions on a full time basis, but that he should be capable of part-time work with frequent position changes.  *Id.* at 389.  Dr. Vrablik also stated that Wright's pain was subjective and he needed to review the results of Wright's EMG and biopsy.  The record does not indicate that either an EMG or biopsy was subsequently performed.

On June 16, 2009, Hartford referred Wright's claim file to an outside contractor in order to obtain an independent medical peer review consultant to determine Wright's functional capacity.  Dr. Howard Choi, board certified in physical medicine & rehabilitation, then reviewed Wright's medical records along with the surveillance footage and prepared a report in which he concluded that Wright was "capable of functioning at a medium physical demand level up to 40 hours per week."  *Id.* at 372-76.  Dr. Choi did recommend restrictions from heavy physical demand occupations due to Wright's multiple abdominal surgeries.  However, Dr. Choi also concluded that "[t]here is no objective basis for any limitations and/or restrictions with respect to bending, sitting, standing, walking, reaching, fine motor hand activities, performing repetitive hand or foot movements, or other work-related activities on a full time basis."  *Id.* at 375.

In July 2009, Hartford then had an Employability Analysis Report ("EAR") for Wright prepared based on the restrictions and capability conclusions of Dr. Choi and Wright's education

and employment history.  The EAR states that Wright was capable of working in the following occupations: Project Director, Operations Officer, Department Manager, Management Trainee, and General Supervisor.  *Id.* at 104.[2]

Hartford then decided to terminate Wright's LTD benefits and informed him of this adverse benefit determination and provided an explanation in an August 4, 2009 letter.  This letter detailed the records and evidence reviewed by Hartford's SIU, including Wright's medical records, Dr. Choi's independent medical peer review, the EAR, and the July 2008 surveillance video.  Hartford explained that its decision to terminate Wright's benefits was due to the fact that "the medical, surveillance, on-site interview, and vocational evidence received does not illustrate a condition continues to prevent Mr. Wright from performing the Essential Duties of his Occupation, or alternative work as detailed above."  *Id.* at 171.  Hartford also explained that its "decision to terminate further benefits is not based on any single aspect of Mr. Wright's claim in and of itself, but rather is based on all available information received to date."  *Id.*

On August 18, 2009, by letter, Wright administratively appealed Hartford's adverse benefit determination arguing that Hartford's determination was arbitrary and capricious because Hartford relied on "stale" medical records, failed to consider the disabling side effects of Wright's medications, improperly relied on the July 2008 surveillance video, ignored Wright's inability to drive, and relied on the opinion of a non-treating physician who did not review an FCE.  *Id.* at 298-301.  Hartford then transferred Wright's claim file to a Hartford Appeals Specialist, to which Wright submitted updated medical records.

In January 2010, the Appeals Specialist referred Wright's medical records to an outside contractor in order to obtain a new independent medical record review.  Dr. Eric Kerstman,

---

[2] According to Hartford, it reviewed Wright's claim under both the "Your Occupation" disability definition as well as the "Any Occupation" definition, which was scheduled to become operative on August 22, 2009.

board certified in physical and rehabilitation medicine, then conducted a review of Wright's records, the surveillance footage, and contacted Wright's treating physicians regarding his functional capacity.  On February 22, 2010, after completing his review of Wright's record, Dr. Kerstman submitted a report in which he concluded that "[b]ased on [his] review of the records provided, the surveillance video, and [his] discussions with the attending providers it is [his] opinion that [Wright] has chronic pain and is capable of sedentary work" 8 hours per day, 5 days per week with restrictions and limitations of lifting no more than 10 pounds, sitting for no more than 2 hours with the ability to change positions frequently and for no more than 8 hours total per day.  *Id.* at 223.  Dr. Kerstman explained that "[a]lthough [Wright's] pain symptoms were reported as 8/10, it was noted that he was having some relief from his analgesic medications" and "[t]he only documented side effects from his medications were constipation which was controlled with adjustment of analgesic dosing and laxatives."  *Id.*

On February 25, 2010, Hartford informed Wright by letter that after review of his claim on appeal it had upheld its determination to terminate benefits.  This letter referred to all of the records and evidence that Hartford considered and addressed the argument raised by Wright in his appeal letter.  Hartford referred to the following opinions and statements by Wright's treating physicians: Dr. Garrison's opinion on September 19, 2009, after Wright's initial denial of LTD benefits, that Wright was not capable of gainful employment due to inability to use a computer or to sit for over 15 minutes at a time; Dr. Jeffers's (chiropractor) statement to Dr. Kerstman that Wright was not capable of any work due to his pain and the amount of analgesics he was taking; Dr. Garrison's statement to Dr. Kerstman that while Wright was not capable of working in any capacity, he deferred to Dr. Vrablik for specific work restrictions and limitations; and Dr. Vrablik's statement to Dr. Kerstman that he could not determine Wright's work capabilities

without a FCE.  However, Hartford explained that "[w]hile we understand that certain

restrictions and limitations are supported by the totality of the evidence, and that as a result Mr.

Wright may not be able to perform certain activities or tasks, the totality of the evidence does not

support that Mr. Wright would have been prevented from performing one of more of the

Essential Duties of his Occupation or Any Occupation as of 8/4/2009."  *Id.* at  152

## II.    <u>STANDARD OF REVIEW</u>

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words,

"[s]ummary judgment may be granted only if there exists no genuine issue of material fact that

would permit a reasonable jury to find for the nonmoving party."  *Miller v. Ind. Hosp.*, 843 F.2d

139, 143 (3d Cir. 1988).  All facts and inferences must be construed in the light most favorable

to the non-moving party.  *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994).

The judge's function is not to weigh the evidence and determine the truth of the matter, but to

determine whether there is a genuine issue for trial.  *See Anderson*, 477 U.S. at 249.

"Consequently, the court must ask whether, on the summary judgment record, reasonable jurors

could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party

is entitled to a verdict."  *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production.

*Celotex*, 477 U.S. at 323.  This burden requires the moving party to establish either that there is

no genuine issue of material fact and that the moving party must prevail as a matter of law, or to

demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden.  *Id.* at 322-23.  This burden can be "discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, thus establishing the existence of a "genuine issue of material fact" justifying trial.  *Miller*, 843 F.2d at 143; *accord Celotex*, 477 U.S. at 324.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  Further, summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50.

## III.  <u>DISCUSSION</u>

### A.      **Hartford's Termination of Benefits**

Where an ERISA-governed benefit plan gives the plan administrator or fiduciary discretion in "interpret[ing] the plan and making benefits determinations," as the Plan does in this case, a court reviewing a benefits denial employs an "arbitrary and capricious" standard.[3] *Skretvedt v. E.I. Dupont De Nemours & Co.*, 268 F.3d 167, 173–74 (3d Cir. 2001).  Under this

---

[3] "In the ERISA context, the arbitrary and capricious and abuse of discretion standards of review are essentially identical."  *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 n.2 (3d Cir. 2011).

standard, the reviewing court must defer to the administrator unless its decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Abnathya v. Hoffman–LaRoche, Inc*., 2 F.3d 40, 45 (3d Cir. 1993) (internal citations omitted).  A court may overturn a plan administrator's conclusion "if it is clearly not supported by evidence in the record or the administrator has failed to comply with the procedures required by the plan." *Id.* at 41. When evaluating claims under the substantial evidence prong, there are multiple factors that should be considered regarding whether a plan's decision was supported by substantial evidence in the ERISA context.

In support of its motion for summary judgment and in opposition to Hartford's motion for summary judgment, Wright argues that Hartford's denial of his administrative appeal[4] was arbitrary and capricious for the following reasons: (1) Hartford failed to consider all of the medical evidence provided by Wright's treating physicians; (2) Hartford placed too much weight on the surveillance footage; (3) Hartford ignored the recommendation of Wright's treating physicians that Wright undergo an FCE; and (4) Hartford's determination was improperly influenced by a conflict of interest.  Hartford contends that its decision to uphold its termination of Wright's LTD benefits was supported by substantial evidence in the administrative record including: (1) the July 2008 surveillance footage; (2) the MCM's review of Wright's medical records; (3) Dr. Choi's independent medical review in which he concluded that Wright was capable of working full time at a medium physical demand level; (4) the EAR indicating several jobs available in the national economy of which Wright was capable of performing; and (5) a

---

[4] "A plan administrator's final, post-appeal decision should be the focus of review," though "[a] court may of course consider a plan administrator's pre-final decisions as evidence of the decision-making process that yielded the final decision." *Funk v. CIGNA Group Ins.*, 648 F.3d 182, 191 (3d Cir. 2011).

second independent medical review by Dr. Kerstman, in which he concluded that Wright was capable of performing sedentary work on a full time basis with certain restrictions.

Wright fails to demonstrate that Hartford was arbitrary and capricious in denying his claim for continuing LTD benefits. Wright's argument that Hartford failed to consider the medical evidence provided by his treating physicians is not supported by the record. Wright points to a September 18, 2009 office visit note in which Dr. Garrison wrote that Wright was not capable of gainful employment due to inability to use a computer or to sit for over 15 minutes at a time.[5] However, the record demonstrates that this note from Dr. Garrison was considered by Hartford in its review of Wright's medical records. *See* Mendez Decl., Ex. B at 150. Dr. Kerstman spoke with Dr. Garrison about this opinion on February 11, 2010, at which time Dr. Garrison indicated that, while he believed Wright was not capable of working, he would defer to Dr. Vrablik for Wright's specific work restrictions and limitations. *Id.* at 221. Dr. Kerstman then spoke with Dr. Vrablik who indicated that he could not determine Wright's work capabilities without an FCE and that he was uncertain if Wright's pain would prevent him from returning to work. *Id.* at 222. Accordingly, it is clear that Hartford and its independent medical peer reviewer considered Dr. Garrison's September 18, 2009 office visit note.

Wright also contends that Hartford arbitrarily ignored the side effects of his medications mentioned in his medical records. Wright does not point to any objective medical evidence in the record regarding the purportedly disabling side effects of his medication, but rather focuses primarily on an affidavit of Dr. Garrison, made after Hartford's denial of Wright's administrative appeal. *See* August 26, 2011 Affidavit of Dr. David M. Garrison ("Garrison Aff."), Exhibit AG

---

[5] Hartford points out that just a few months earlier, on May 21, 2009, in response to Hartford's request for his opinion on Wright's functional capacity, Dr. Garrison declined to offer an opinion, explaining that it would be more appropriate for Wright to be evaluated by "someone with a higher level of expertise," for example, "[a] clinical evaluation by a physician who specializes in pain management, physiatry." Mendez Decl., Ex. B at 392.

to the Affidavit of Kevin K. Kutyla in Support of Motion for Summary Judgment ("Kutyla

Aff."). In this affidavit, Dr. Garrison states that his records, which were turned over to Hartford

during its review of Wright's claim, list all of Wright's medications and that "[t]hose records

would clearly indicate to any competent physician that Mr. Wright is not capable of gainful

employment due to his chronic pain and due to the effects of the numerous medications."

Garrison Aff. ¶ 12. Dr. Garrison then states both that: (1) he told someone from Hartford over

the phone that "while Mr. Wright is capable of doing yard work for an hour or two, his chronic

pain and the side effects of his medication prevent him from being gainfully employed," *Id.* ¶ 10;

and (2) that had anyone at Hartford asked him about anything other than the surveillance footage,

he would have responded that Wright is not capable of any gainful employment due to the side

effects of his numerous medications. *Id.* ¶ 18.

        The Court reviews Hartford's benefits determination based on the record available to the

plan administrator at the time of the determination. *Kosiba v. Merck & Co.*, 384 F.3d 58, 69 (3d

Cir. 2004). Therefore, Dr. Garrison's opinion regarding the disabling side of effects of Wright's

medications is significant only to the extent that Dr. Garrison communicated this information to

Hartford during its review of Wright's claim.[6] Significantly, Wright does not point to any

evidence in the medical records actually before Hartford during the administrative appeal which

---

[6] Hartford moves to strike the Garrison Affidavit along with other exhibits attached to Wright's
motion for summary judgment. With respect to the affidavit, while Hartford is correct that the
Court's review is generally limited to the record before Hartford at the time of its benefits
determination, anything said to Hartford by Dr. Garrison would be considered part of the
administrative record. *See Baker v. The Hartford Life Ins. Co.*, No. 08-6382, 2010 WL 2179150,
at *7 (D.N.J. May 28, 2010). Therefore, the Garrison Affidavit will not be stricken.

        Hartford seeks to strike other exhibits attached to Wright's motion for summary judgment
on the grounds that some of these exhibits constitute medical records that were not submitted to
Hartford during its administrative review and some were not properly authenticated. Hartford
does, however, acknowledge that some of these allegedly improperly authenticated documents
are already included in the administrative record filed by Hartford. It is not necessary to strike
these exhibits as the Court has not considered any medical records that were not part of the
record before Hartford or any documents that were not properly authenticated.

demonstrates that he was disabled according to the terms of the Plan due to these side effects. Hartford argues that Wright raised this argument regarding the side effects of his medication for the first time in letter administratively appealing the initial denial of LTD benefits.  According to Hartford, none of the records submitted by Wright on appeal provide objective evidence of disabling side effects of his medications.  *See* Mendez Decl., Ex. B at 255-92.[7]  The record demonstrates that Hartford did in fact consider the side effects of Wright's medications in its review of his claim for LTD benefits.  Dr. Kerstman's report indicates that he was asked to consider the "possible side effects from the medications" and that he concluded that "[t]he only documented side effects from his medications were constipation which was controlled with adjustment of analgesic dosing and laxatives."  *Id*. at 223.

Wright's argument that Hartford's denial of his appeal was arbitrary and capricious because Hartford ignored the opinions of his treating physicians is not supported by the record. Wright does not point to any objective clinical evidence in the record in support of his claim that he was disabled under the Plan.  Wright does not point to any clinical tests in his medical records demonstrating his functional limitations.  As Hartford points out, the only objective test results in the record regarding Wright's functional capacity is a December 2008 EMG report of his upper and lower extremities, which was negative for cervical radiculopathy.  It is within Hartford's discretion to consider the opinions of Wright's treating physicians along with the opinions of its independent medical reviewers and to credit the latter over the former.  The Supreme Court has made clear that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a

---

[7] Hartford notes that the only mention of side effects of medication in Wright's records submitted on appeal is Dr. Vrablik's May 18, 2009 note that Wright "denies any other side effects."  Mendez Decl., Ex. B at 279.

discrete burden of explanation when they credit reliable evidence that conflicts with a treating

physician's evaluation."  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).[8]

Here, Dr. Kerstman, the independent medical expert who reviewed Wright's medical

records on appeal, spoke with Wright's treating physicians and considered their opinions—in

which they were unwilling to state conclusively that Wright was disabled under the Plan—and

came to the conclusion that Wright was able to perform sedentary work with some physical

restrictions.  Wright has failed to demonstrate that Hartford's decision to uphold the denial of his

benefits based in part on Dr. Kerstman's report was arbitrary and capricious.

Wright's argument that Hartford improperly relied on the July surveillance footage is

unavailing and does not support a finding that Hartford's denial of his LTD benefits was

arbitrary and capricious.  Wright argues that "a careful analysis of the surveillance footage does

not unequivocally prove that the Plaintiff is no longer disabled."  Pl. Mot. Br. 5.  That, however,

does not correctly state the legal standard, nor was the surveillance film the only evidence that

Hartford relied upon.  Hartford mentioned the surveillance footage in only one paragraph of its

six-page letter to Wright informing him of its basis for denying his appeal.  There is no

indication that Hartford's consideration of the surveillance footage of Wright digging, shoveling,

and moving containers of dirt at a time when he claimed to be unable to perform his sedentary

---

[8] Wright relies on *Stith v. Prudential Ins. Co. of Am.*, 356 F. Supp. 2d 431 (D.N.J. 2005) in
support of his argument that it is arbitrary and capricious for an administrator to discount a
claimant's treating physicians' opinions regarding claimant's pain in favor of a medical
consultant's opinion.  In *Stith*, the court held that Prudential's reliance on its medical consultant
was arbitrary and capricious where that consultant completely rejected the opinions of claimant's
three treating physicians regarding claimant's chronic pain without explanation on the basis that
pain is subjective.  *Id.* at 439-40.  Here, however, Dr. Kerstman acknowledged Wright's
physicians' opinions regarding his pain and accounted for that pain by concluding that Wright
was capable of performing sedentary work with certain physical limitations.  Additionally, it is
clear that Dr. Kerstman considered Wright's physicians' opinions in light of objective clinical
evidence such as Wright's December 2008 EMG.

occupation, as one piece of evidence among many, was improper and Wright cites no case law demonstrating that it was arbitrary and capricious.

Wright argues that Hartford acted in an arbitrary and capricious manner by failing to provide a FCE based on the opinion of Wright's treating physicians that it would be useful in determining his functional capacity.  "When challenging the determination of an ERISA plan administrator, the plaintiff bears the burden of establishing that he is disabled under the plan and entitled to continuing benefits."  *Williams v. Metro. Life Ins. Co.*, No. 08-1478, 2010 WL 936147, at *7 (D.N.J. Mar. 12, 2010).  The Plan clearly states that "[a]ll proof submitted must be satisfactory to [Hartford]."  Mendez Decl., Ex. A at 17.  Hartford was not obligated to conduct testing or gather evidence additional to that which was submitted by Wright.  *See Stith*, 356 F. Supp. 2d at 440.  Therefore, its failure to do so was not arbitrary and capricious.

Finally, the Court considers Wright's argument that Hartford's role as Plan insurer and administrator creates a structural conflict of interest that must be weighed in favor of a finding that Hartford's denial of Wright's LTD benefits was arbitrary and capricious.  The Supreme Court has held that a conflict of interest arises where "a plan administrator both evaluates claims for benefits and pays benefits claims."  *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008).  "In such a circumstance, 'every dollar provided in benefits is a dollar spent by . . . the employer; and every dollar saved . . . is a dollar in [the employer's] pocket.'"  *Id.* (quoting *Bruch v. Firestone Tire & Rubber Co.*, 828 F.2d 134, 144 (3d Cir. 1987)).  The court considers this conflict of interest as one factor "of several different considerations" which that court takes into account.  *Id.* at 117.  The Supreme Court explained that this conflict of interest

> should prove more important (perhaps of great importance) where circumstances
> suggest a higher likelihood that it affected the benefits decision, including, but not
> limited to, cases where an insurance company administrator has a history of
> biased claims administration. . . .  It should prove less important (perhaps to the

vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Id.* (internal citation omitted).

Hartford argues that the conflict of interest should be given little to no weight because Hartford has taken the very steps mentioned in *Glenn* to wall of its claims administrators and to encourage accurate benefits determinations and Wright has failed to demonstrate any evidence showing a link between Hartford's conflict of interest and its denial benefits determination. *See Grimes v. Prudential Fin. Inc.*, No. 09-419, 2010 WL 2667424, at *15 (D.N.J. Jun. 29, 2010) ("To demonstrate that a causal connection exists, the plaintiff must point to a link between the administrator's conflict and its benefits determination."). Hartford explains, and Wright does not contest, that it has taken, *inter alia*, the following steps to reduce the effect of any conflict of interest: (1) its claims administration employees are not compensated based on the number of claims denied, but rather, are evaluated based on the accuracy of their determinations; (2) its claims department is kept wholly separate from its finance department; (3) and it maintains a separate appeals unit and employees handling appeals do not discuss claims with employees who made the initial determination on the claim. *See* Declaration of Bruce Luddy, ¶¶ 8-12.

Accordingly, while the Court considers the conflict of interest factor to weigh in favor of Wright, based on Hartford's protective measures and Wright's failure to link any conflict of interest to the benefits determination, it does not accord significant weight to this factor.[9]

---

[9] Wright's reliance on *Simon v. Prudential Ins. Co. of Am.*, No. 10-4286, 2011 WL 2971203 (D.N.J. Jul. 20, 2011) is misplaced. In *Simon* the court considered the conflict of interest factor, found that it weighed in favor the plaintiff, and ultimately found that Prudential's denial of benefits was arbitrary and capricious. However, in that case, Prudential clearly ignored the recommendation of its own pain medicine expert that "a more precise assessment of the claimant's restrictions/limitations cannot be made in the absence of a forensic physical assessment," yet listed, in its appeal letter to plaintiff, that doctor's review as one of the four

**B.      Preemption**

In addition to the claim discussed above, the Complaint asserts causes of action for breach of fiduciary duty[10] and breach of contract.  While Hartford moves for summary judgment on these claims, Wright fails to discuss them in either his opposition brief or in his motion for summary judgment and, therefore, appears to have abandoned these claims.  Regardless, these state law claims are preempted by ERISA and the breach of fiduciary duty claim, to the extent it is made under ERISA § 502(a)(3), is improper.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefits plan."  29 U.S.C. § 1144(a).  "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).  Wright's breach of contract claim and his breach of fiduciary duty claim, to the extent it is brought as a state law claim, are, therefore, preempted by ERISA.  *See Pane v. RCA Corp.*, 868 F.2d 631, 635 (3d Cir. 1989) (holding breach of contract claim preempted); *Schmelzle v. Unum Life Ins. Co. of Am.*, No. 08-734, 2008 WL 2966688, at *3 (D.N.J. Jul. 31, 2008) (holding breach of fiduciary duty claim preempted).

---

pieces of evidence on which it relied.  *Id.* at *2-4.  Based on this, the court found that "no reasonable person could conclude that, when Prudential ignored the opinion and recommendation of its pain medicine expert, it acted solely in the interest of the beneficiary, Plaintiff."  *Id.* at *5.  The reasoning of the *Simon* court does not apply here where there is no indication that Hartford ignored the clear recommendation of either of its experts or the opinions of any of the relevant doctors.  Rather, the record demonstrates that both Prudential and its independent medical reviewers considered the opinions of all of Wright's treating physicians and that Prudential credited the opinions of its medical reviewers in determining that Wright was no longer entitled to LTD benefits under the Plan.

[10] It is not clear whether this breach of fiduciary duty claim is made under state law or under ERISA § 502(a)(3).  Both will be discussed.

To the extent that Wright's breach of fiduciary duty claim is made under ERISA §

502(a)(3), it is improper.  ERISA § 502(a)(3) is considered a "catchall" provision which "offer[s]

appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere

adequately remedy."  *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).  Here, Wright has

challenged Hartford's benefits determination and brought a claim under ERISA § 502(a)(1)(B)

"to recover benefits due to him under the terms of his plan, to enforce his rights under the terms

of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. §

1132(a)(1)(B).  Therefore, he "cannot pursue the same claim based on breach of fiduciary duty

under the 'safety-net' provisions of [ERISA § 502(a)(3)]."  *Powell, II v. Greater Media Inc.*

*Long Term Disability Plan*, No. 07-726, 2008 WL 5188789, at *3 (E.D. Pa. Dec. 10, 2008).

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is **DENIED** and

Defendants' motion for summary judgment is **GRANTED**.  In addition, Defendants' motion to

strike is **DENIED**.  An appropriate Order shall follow.

/s/ Faith S. Hochberg_____
Hon. Faith S. Hochberg, U.S.D.J.